**Jerry ETSHOKIN, Plaintiff,**

v.

**TEXASGULF, INC., Canada Development Corporation, and H. Anthony Hampson, Defendants.**

**No. 82 C 6286.**

United States District Court, N.D. Illinois, E.D.

Aug. 28, 1984.

William V. Johnson, Pamela L. Gellen, Johnson, Cusack & Bell, Ltd., Chicago, Ill., for plaintiff.

Alan N. Salpeter, James D. Brusslan, Mayer, Brown & Platt, Chicago, Ill., P.B. Konrad Knake, White & Case, New York City, for defendant Texasgulf, Inc.

Edward L. Foote, Stephen C. Schulte and John W. Stack, Winston & Strawn, Chicago, Ill., Fried, Frank, Harris, Shriver & Jacobson, New York City, for defendants Canada Development Corp. and H. Anthony Hampson.

**MEMORANDUM OPINION**

PRENTICE H. MARSHALL, District Judge.

Plaintiff sought leave to file a third amended complaint; defendants objected. Plaintiff then voluntarily dismissed three of the four individual defendants, leaving only defendant Hampson. We asked plaintiff to revise the third amended complaint accordingly.

The first change from the previous complaint is that a new plaintiff, Beem Corp., is added. Plaintiff states that during discovery, he became aware that a financial arrangement he had made with Beem Corp. might mean that the losses caused by defendants were incurred in part by Beem. Defendants do not object to the new plaintiff, and there is no suggestion that the addition will require new discovery.

The "Texasgulf" defendants (Texasgulf, Mollison, and Gallagher) and the "CDC" defendants (CDC, Hampson, and Cote) made numerous objections to the first version of the third amended complaint. Plaintiff's revisions have obviated most of these objections. We will therefore deal only with those that have not been obviated

and with other new matter in the revised version.

Plaintiffs have eliminated the previous allegation that Mollison told the securities analysts on June 18, 1981 that CDC was not planning to dispose of its Texasgulf stock. We had ruled that allegation out of the case in our January 13 opinion. However, in new ¶ 22, plaintiff alleges that on June 18, 1981, Dow Jones or Reuters reported that Texasgulf had denied that CDC indicated any interest in disposing of the stock; plaintiff alleges that this was "as a result of comments made by Texasgulf." This may be an attempt to resurrect the allegation concerning Mollison. We will permit plaintiff to plead this allegation, but since this amended complaint comes at the close of nearly two years of discovery, if plaintiff cannot adduce evidence to support the allegation if challenged on summary judgment, we will be inclined to award defendants attorney's fees under Fed.R. Civ.P. 11. Plaintiff's other choice is to withdraw this part of ¶ 22.

Paragraph 35 appears to be new; it states that CDC failed to correct a June 23 press release denying that it intended to sell its Texasgulf stock and that it knew of a reason for the heavy trading activity in Texasgulf stock. CDC has never moved for summary judgment on the claims against it, and it did not object to the inclusion in the original third amended complaint of the allegation that it made the June 23 statement. Accordingly, we will permit this allegation to remain in the complaint.

Paragraph 37 states that though Texasgulf and CDC undertook to investigate the heavy trading activity in Texasgulf stock between May and June 26, 1981, they failed to make a reasonable investigation. This implies that if they had done so, they would have determined the reason. CDC objected to a similar allegation in the original third amended complaint, ¶ 37, which stated that Texasgulf and CDC had failed to investigate the activity in Texasgulf stock and had failed to take action with respect to "market rumors." In our January 13 opin-

ion, pp. 10–12, we said that Texasgulf had no duty to correct market rumors, and that since its only public statement was that it knew of no reason for the trading activity, it did not have to go out and determine whether reasons actually existed. The new claim is slightly different; Texasgulf investigated but did a halfway job. However, under the authorities at pp. 10–12 of the January 13 opinion, if no public statements were made by Texasgulf based on the investigation, and if Texasgulf did not actually know of a reason for the trading activity, its failure to investigate thoroughly did not violate rule 10b–5. The allegation with respect to Texasgulf in ¶ 37 is stricken.

As to CDC, the complaint alleges, ¶ 31, that a CDC spokesman stated in June 23 that it did not intend to sell its Texasgulf stock and that it knew of no reason for the trading activity in Texasgulf stock but that it was "keeping an eye on it." This is different from Texasgulf's statements, since CDC was involved in negotiations with another company, SNEA, at that time for the sale of its Texasgulf stock. The allegations in ¶ 37 relating to CDC may remain.

Paragraphs 14 through 19 appear for the first time in the revised third amended complaint. They state that during the CDC–SNEA negotiations, Hampson, who was a director of both Texasgulf and CDC, had access to nonpublic Texasgulf information by virtue of his position, particularly relating to the valuation of certain Texasgulf assets, and he gave the information to CDC, which used it in the negotiations. Plaintiff alleges that in doing this, Hampson acted as both a CDC director and a Texasgulf director. Paragraph 19 states that Hampson's knowledge that negotiations were going on should be imputed to Texasgulf. As to the factual allegations concerning Hampson's knowledge and his disclosure to CDC, we make the same observation concerning Fed.R.Civ.P. 11 as we made earlier: since these allegations appear for the first time at the end of discovery if they are challenged on summary judgment and plaintiff cannot support

them we will consider a fee award under rule 11. As to the attempt to impute Hampson's knowledge of Texasgulf, at pp. 13–16 of our January 13 opinion, we in essence ruled that it was unlikely that plaintiff could establish that this could be done, but we did not close the door. It remains to be seen whether plaintiff can establish the factual predicate for this contention. These allegations may remain in the complaint, however.

Finally, paragraph 19 also suggests that CDC and SNEA had reached an agreement in principle by June 23. CDC had cited deposition testimony, which it characterized as uncontradicted, that no agreement whatsoever was reached before June 26. This allegation may remain in the case, subject to the same rule 11 admonition made earlier.

In summary, plaintiffs are granted leave to file the revised third amended complaint, with the admonitions described herein.